<u>NOT FOR PUBLICATION</u>                                                   (Doc. Nos. 59, 74)

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**
**CAMDEN VICINAGE**

―――――――――――――――――――――――――――    :
                                                                            :
MICHAEL M. CHOY,                                        :
                                                                            :
                            Plaintiff,                              :
                                                                            :          Civil No. 08-4092 (RBK/AMD)
                            v.                                        :
                                                                            :          **OPINION**
COMCAST CABLE COMMUNICATIONS, INC.    :
                                                                            :
                            Defendant.                         :
―――――――――――――――――――――――――――    :

**KUGLER**, United States District Judge:

        Michael M. Choy ("Plaintiff") brings this matter against Comcast Cable Communications,

Inc. ("Defendant"), claiming violations of 42 U.S.C. § 1981 and the New Jersey Conscientious

Employee Protection Act ("CEPA"), N.J.S.A. § 34:19-2(e).  Defendant has moved for summary

judgment as to both counts in Plaintiff's Complaint, and has moved to strike portions of

Plaintiff's counterstatement of material facts not in dispute as well as portions of Plaintiff's brief

in opposition to Defendant's motion for summary judgment.  As explained below, the Court

hereby grants in part and denies in part Defendant's motion for summary judgment, and denies

Defendant's motion to strike.

## I.  BACKGROUND

        Plaintiff was hired by Defendant in March 2007 as a Principal Network Engineer

("Principal Engineer") in Comcast's National Engineering and Technical Operations ("NETO")

Backbone Engineering Group (the "Backbone Group").  Pl. Counterstatement of Undisputed

Facts (CUF) ¶ 1.  "The Backbone Group connects and builds the networks that link Comcast's

1

nationwide communications network, which includes its cable, telephone and internet services. The Backbone Group is, in addition, responsible for maintenance, upgrading and managing Comcast's national communications network." Id. ¶¶ 2-3.  The Backbone Group tests products of outside vendor companies for compatibility with and use within the Comcast network. Id. ¶ 4. Steven Surdam, as the manager of the Backbone Group, was Plaintiff's supervisor. Id. ¶ 5.

The instant litigation arises out of Plaintiff's termination for cause on August 15, 2007, after approximately five months of employment at Comcast.  Surdam, Plaintiff's supervisor, had assigned Plaintiff different projects involving testing software compatibility on Comcast's communications network.  Def. Statement of Undisputed Material Fact (SUF) ¶¶ 15, 17.  In April of 2007, Surdam assigned to Plaintiff a project that involved testing "the compatibility of two vendors' communications equipment, Fujitsu and Cisco, for possible use in Comcast's network (the 'Test Project')." Id. ¶ 17.  Plaintiff was informed that this was a rush project because both vendors, Fujitsu and Cisco, as well as Comcast, had an interest in the timely purchase of the communications equipment that Plaintiff was to test.  Id. ¶¶ 23-24.

By May 2007, Surdam had become dissatisfied with what he perceived to be slow progress by Plaintiff on the Test Project.  Def. SUF ¶¶ 25-28.  Plaintiff concedes that he knew the Test Project was on a short timeline, and that he knew Surdam was unhappy with his job performance.  Def. Ex. A, Choy Dep., at 75:24-76:12.  On June 27, 2007, Surdam met with Plaintiff and informed Plaintiff that he was not a good fit for Comcast's needs.  Def. SUF ¶ 46. At the meeting, Surdam provided a termination notice to Plaintiff, which included a written summary of Plaintiff's perceived performance problems.  Id.

Subsequent to the June 27 meeting with Surdam, Plaintiff was given an option to stay on Comcast's payroll while looking for other employment opportunities inside and outside Comcast.

Id. at 86:22-24, 87:2-24.  Plaintiff chose to remain on staff and began looking for other employment, during which time Plaintiff went on several informational interviews with other divisions within Comcast.  Def. SUF ¶¶ 66-67.

On August 15, 2007, Tracey Kopper, then a Senior Manager of Human Resources at Comcast, called a meeting with Plaintiff and Surdam to discuss Plaintiff's progress of looking for alternate employment and to establish a last day of work at Comcast should he be unable to secure an internal transfer.  Id. ¶ 69.  At this meeting, Kopper suggested that Plaintiff be given a deadline of two more weeks to remain on staff.  Id. ¶ 70.  The parties dispute the events that subsequently occurred at the August 15 meeting.  Defendant argues that Plaintiff became angry during the meeting, raised his voice, stood up, began pacing around, and repeatedly stated "I can do a lot in two weeks."  Id. ¶¶ 70-72.  Kopper and Surdam state that they perceived this statement to be a threat to the safety of Comcast's network, and terminated Plaintiff on the same day.  Id. ¶¶ 74-76.  Plaintiff denies that he was agitated or that he made the alleged statement.

Plaintiff filed an "Open Door" complaint on October 12, 2007 with Comcast's Corporate Human Resources office.  Id. ¶ 81.  The Open Door process allows Comcast employees to have their concerns independently reviewed by another Comcast Human Resources manager not involved in the original decision being complained of.  Id. ¶ 82.  In his Open Door complaint, Plaintiff alleged several reasons why he believed his termination was improper.  Id. ¶ 83.

Marcia Martinez-Helfman, a Senior Director in the Human Resources department at Comcast at the time, was in charge of the investigation of Plaintiff's Open Door complaint.  Id. ¶ 87.  As part of her investigation, Helfman reviewed the documents provided by Plaintiff and Comcast Human Resources Department related to Plaintiff's employment at Comcast.  Helfman also interviewed several individuals identified by Plaintiff to gather more information.  Id.

Helfman subsequently issued a report that stated Helfman's opinion that it was Plaintiff's performance problems, and not the reasons Plaintiff suggested, that were the true reasons for Plaintiff's termination.  Id. ¶ 92.

On August 14, 2008, Plaintiff filed the Complaint in this instant case, alleging race discrimination in violation of Section 1981 and violation of the N.J. CEPA.

## II.  LEGAL STANDARD

### A. Motion for Summary Judgment

Summary judgment is appropriate where the Court is satisfied that "there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c); see Celotex Corp. v. Catrett, 477 U.S. 317, 330 (1986).  A genuine issue of material fact exists only if the evidence is such that a reasonable jury could find for the nonmoving party.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  When the Court weighs the evidence presented by the parties, the Court is not to make credibility determinations regarding witness testimony.  Sunoco, Inc. v. MX Wholesale Fuel Corp., 565 F. Supp. 2d 572, 575 (D.N.J. 2008).  "The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor."  Anderson, 477 U.S. at 255.

However, to defeat a motion for summary judgment, the nonmoving party must present competent evidence that would be admissible at trial.  See Stelwagon Mfg. Co. v. Tarmac Roofing Sys., 63 F.3d 1267, 1275 n.17 (3d Cir. 1995).  The nonmoving party "may not rest upon the mere allegations or denials of" its pleadings and must present more than just "bare assertions [or] conclusory allegations or suspicions" to establish the existence of a genuine issue of material fact.  Fireman's Ins. Co. of Newark, N.J. v. DuFresne, 676 F.2d 965, 969 (3d Cir. 1982) (citation omitted); see Fed. R. Civ. P. 56(e).  "A party's failure to make a showing that is 'sufficient to

4

establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial,' mandates the entry of summary judgment." Watson v. Eastman Kodak Co., 235 F.3d 851, 857-58 (3d Cir. 2000) (quoting Celotex Corp., 477 U.S. at 322).

### B. Motion to Strike

Under Rule 12(f), a party may move to strike from a pleading "an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." A court has "considerable discretion" in deciding a Rule 12(f) motion. Tonka Corp. v. Rose Art Indus., Inc., 836 F. Supp. 200, 217 (D.N.J. 1993). However, motions to strike are disfavored and usually will be denied "unless the allegations have no possible relation to the controversy and may cause prejudice to one of the parties, or if the allegations confuse the issues in the case." River Road Dev. Corp. v. Carlson Corp. Ne., No. 89-7037, 1990 WL 69085, at *3 (E.D. Pa. May 23, 1990). A motion to strike is not a proper way to dismiss part of a complaint for legal insufficiency. See Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1380, at 391 (3d ed. 2004). Nevertheless, a court can consider an improper Rule 12(f) motion as a motion to dismiss under Rule 12(b)(6). See Deluca v. Michigan, No. 06-12552, 2007 WL 1500331, at *1 (E.D. Mich. May 23, 2007); Magnotta v. Leonard, 102 F. Supp. 593, 593 (M.D. Pa. 1952).

## III. DISCUSSION

### A. Plaintiff's Discrimination Claim under 42 U.S.C. § 1981

Plaintiff first asserts that Comcast discriminated against Plaintiff in violation of 42 U.S.C. § 1981 because Comcast terminated him on account of his race.

Section 1981 guarantees the right of all persons in the United States "to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property." 42 U.S.C. § 1981. When an employee

5

asserts a disparate treatment claim for racial discrimination under § 1981 based on circumstantial evidence, the familiar McDonnell-Douglas burden-shifting analysis applies.  See Brown v. J. Kaz, Inc., 581 F.3d 175, 181-182 (3d Cir. 2009) (applying McDonnell-Douglas analysis to employment discrimination claim under § 1981).

Under the McDonnell Douglas framework, the plaintiff "bears the initial burden of establishing a prima facie case by a preponderance of the evidence."  Sarullo v. United States Postal Serv., 352 F.3d 789, 797 (3d Cir. 2003) (citation omitted).  Ordinarily, to establish a prima facie case of disparate treatment under § 1981, a plaintiff must prove:[1]  (1) he is within a protected class, (2) "he applied for and was qualified for a job in an available position"; (3) he was rejected for the position; and (4) "after the rejection, the position remained open and the employer continued to seek applications from persons of plaintiff's qualifications for the position."  Marley v. CORT Furniture Rental Corp., No. 06-4926, 2008 U.S. Dist. LEXIS 69383, at *4-5 (D.N.J. Aug. 26, 2008) (citing Bray v. Marriott Hotels, 110 F.3d 986, 990 (3d Cir. 1997)).

The Third Circuit has "modified the first element of the prima facie case for discrimination claims brought by non-minorities."  Warenecki v. City of Philadelphia, No. 10-1450, 2010 U.S. Dist. LEXIS 116912, at *13-14 (E.D. Pa. Nov. 3, 2010).  According to the Third Circuit, "all that should be required to establish a prima facie case . . . is for the plaintiff to present sufficient evidence to allow a fact finder to conclude that the employer is treating some people less favorably than others based upon a trait that is protected."  Iadimarco v. Runyon, 190 F.3d 151, 161 (3d Cir. 1998) (citing United States Postal Serv. Bd. of Governors v. Aikens, 460

---

[1] When analyzing employment discrimination claims under § 1981, the Third Circuit applies the prima facie case for employment discrimination claims developed under Title VII.  Schurr v. Resorts Intern. Hotel, Inc., 196 F.3d 486, 499 (3rd Cir. 1999) ("In the Third Circuit, the elements of employment discrimination under Title VII are identical to the elements of a section 1981 claim.")

U.S. 711, 715 (1983).  "Thus, in order to establish a prima facie case of employment

discrimination . . . , a non-minority plaintiff must show (1) he or she was qualified for the

position in question, (2) he or she suffered an adverse employment action, and (3) the evidence is

adequate to create an inference that the adverse employment action was based on a trait

protected."  Warenecki, 2010 U.S. Dist. LEXIS 116912, at *14 (citing Mosca v. Cole, 384 F.

Supp. 2d 757, 765 (D.N.J. 2005)).

     "After an employee has established a prima facie case, this creates a presumption of

discriminatory intent by the defendant-employer."  Stewart v. Rutgers, State Univ., 120 F.3d 426,

432 (3d Cir. 1997) (explaining the McDonnell Douglas framework in the context of a § 1983

claim).  "The burden then shifts to the defendant to produce evidence that the adverse

employment action was taken 'for a legitimate, nondiscriminatory reason.'"  Stewart, 120 F.3d at

432 (quoting Tex. Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248, 254 (1981)).  "To

accomplish this, the defendant must clearly set forth, through the introduction of admissible

evidence, the reasons for the plaintiff's rejection, which would support a jury finding that

unlawful discrimination was not the cause of the adverse employment action."  Id. (internal

quotation marks and citations omitted).  "If the defendant's evidence creates a genuine issue of

fact, the presumption of discrimination drops from the case."  Id. (citing Burdine, 450 U.S. at

260 (noting that "the defendant bears only the burden of explaining clearly the nondiscriminatory

reasons for its actions")).  "The burden then falls upon the plaintiff to prove that the 'employer's

proffered reason [for the employment action] was not the true reason for the . . . decision' but

was instead pretextual."  Id. (quoting St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 508 (1993)).

     To defeat summary judgment when an employer offers proof of a nondiscriminatory

reason for its actions,

> The plaintiff cannot simply show that the employer's decision was wrong or mistaken, since the factual dispute at issue is whether discriminatory animus motivated the employer, not whether the employer is wise, shrewd, prudent, or competent.  Rather, the plaintiff must demonstrate such weakness, implausibilities, inconsistencies, incoherences, or contradictions in the employers' proffered legitimate reasons for its action that a reasonable factfinder could rationally find them 'unworthy of credence, and hence infer that the employer did not act for the asserted nondiscriminatory reasons.

Fuentes v. Perskie, 32 F.3d 759, 765 (3d Cir. 1994) (internal quotation and alteration marks and citations omitted).

Defendant argues that Plaintiff cannot establish a prima facie case of discrimination because there is no evidence from which a reasonable jury could conclude that Defendant terminated Plaintiff because of his race.  Plaintiff offers five circumstances that allegedly give rise to an inference of racial discrimination:  (1) Plaintiff was excluded from the "all-white, male team in the Backbone Group;" (2) Surdam's e-mail of July 17, 2007 stated that Plaintiff "is definitely not a fit for the group but [I] want to cover myself here;" (3) Surdam's assertions that Plaintiff was performing inadequately were pretextual because they make no sense from an operational standpoint; (4) Surdam left Plaintiff isolated, with no support on the Test Project; and (5) Olivia Jarvis, a member of Comcast's Human Resource Department, stated to Surdam in a July 7, 2009 e-mail that there were "insufficient grounds" to sustain Plaintiff's termination (Pl.'s Opp'n Br. at 5-6).

As discussed below, the Court finds that Plaintiff has presented sufficient evidence to establish the third element of a prima facie case of race discrimination.  That is, Plaintiff has presented evidence from which a reasonable jury could infer that Defendant failed to promote him because of his race.

8

### 1.   Plaintiff's Prima Facie Race Discrimination Case

Defendant argues that Plaintiff cannot establish the first prong of his prima facie race discrimination case because Plaintiff cannot demonstrate that he was qualified for the position of Principal Engineer.  Defendant also argues that Plaintiff cannot establish the third prong because Plaintiff cannot create an inference that the reason for his termination was motivated by discriminatory animus.  The Court finds that, to the contrary, Plaintiff has made sufficient showings as to both prongs of his prima facie discrimination claim.

With regard to Plaintiff's qualifications for the position of Principal Engineer, it is apparent from Plaintiff's resume that he possesses more than adequate formal qualifications. Defendant does not dispute that Plaintiff possesses a Ph.D. in Applied Physics from Stanford University after graduating from the University of California Berkeley with Phi Beta Kappa and Sigma Xi honors in Engineering Physics.  Pl. Ex. PX 20.  Defendant also concedes that Plaintiff has more than 15 years of experience in audio, video, and data systems network communication architecture and new technology evaluation.  Id.  Plaintiff previously performed "timely implementation of an 80gb test-bed for new All-wave fiber optic support with some of the country's premiere network optics engineering labs including Lucent Bell Labs and IBM Watson Lab.  Pl. Opp'n br. at 9.  Plaintiff has authored 67 journal and conference publications, has appeared as an invited speaker or lecturer at several conferences in the U.S. and in Asia, and holds two U.S. Patents on existing industry products.  Id. (citing Pl. Ex. PX 20).

Defendant argues that despite all of these qualifications listed in Plaintiff's resume, Plaintiff was not qualified for the position of Principal Engineer because Plaintiff was unable to perform adequately on the Test Project.  Plaintiff responds that his performance on the Test Project was more than adequate, and that Defendant's poor evaluation and assessment of

9

Plaintiff was motivated by disdain for Plaintiff's race.  The issue of Plaintiff's performance on the Test Project is central to Plaintiff's claim for race discrimination, and to Defendant's motion for summary judgment.  However, Plaintiff, as the non-movant, is entitled to having "all justifiable inferences . . . drawn in his favor."  <u>Anderson</u>, 477 U.S. at 255.  It is important to note that Surdam initially hired Plaintiff for the position of Principal Engineer based on Plaintiff's qualifications.  The Court finds that on the basis of Plaintiff's more than sufficient formal qualifications for the position of Principal Engineer, it is justifiable to infer, contrary to Defendant's arguments, that Plaintiff was "qualified for the position in question."  <u>Warenecki</u>, 2010 U.S. Dist. LEXIS 116912, at *14.

Defendant next argues that Plaintiff cannot demonstrate an inference of discriminatory animus to establish a prima facie claim.  The Court finds that Plaintiff has produced at least two documents that would allow a reasonable finder of fact to question Defendant's motives for terminating Plaintiff.  The first document is a July 10, 2007 internal Human Resources Department e-mail from Olivia Jarvis to Tracey Kopper, both of whom were Human Resources managers.  The e-mail concludes, "I don't know if we have enough to support [Plaintiff's] termination or if you have more information that Steve [Surdam] has not shared."  Pl. Ex. PX 15. Defendant argues that the most reasonable reading of this e-mail is that it "establishes only that Jarvis was unaware of the full array of Plaintiff's performance deficiencies when she sent it and was asking Kopper . . . for more information."  Def. reply br. at 8.  However, as noted above, Plaintiff, as the non-movant in this motion for summary judgment, is entitled to all justifiable inferences to be drawn in his favor.  The Court finds that a reasonable jury could read Jarvis's July 10 e-mail as expressing the conclusion that there were inadequate grounds to support Plaintiff's termination.  In light of this reading, the jury could also justifiably infer that Surdam's

decision to terminate Plaintiff was not based on Plaintiff's inadequate performance, but rather on a discriminatory motive.

Plaintiff next notes that Matt Scully, Vice President for Commercial Services Engineering at Comcast, favorably evaluated Plaintiff's plan in the Test Project.[2]  Plaintiff cites to notes written by Helfman, during Helfman's investigation of Plaintiff's Open Door Complaint, that contain statements made by another Comcast employee and one of Plaintiff's coworkers, Patrick Peaker.  Helfman's notes memorialized Scully's "[o]pinion [that Plaintiff] had been treated unfairly" and that Plaintiff's report was "fine . . . a good plan."  Pl. Ex. PX 21, Peaker's notes.  The notes further state that Plaintiff was a

> New person given projects w/o opportunity to get acclimated, w/o tools he needed. They had done 40 gig testing on BB b/f & had test plan they wouldn't give it to him [sic].  Could have been a useful reference point.  He was set up to fail.  It was unfair.

Id.  Defendant responds with an affidavit from Scully wherein he states, "I never reviewed Plaintiff's alleged Test Report . . . in 2007.  In fact, I have never seen the document before today . . . . [and] I never made a comment that any such plan 'was a good plan.'"  Scully Decl., Def. Ex. OO, at ¶¶ 3-4.  The Court finds that despite Scully's October 21, 2011 declaration, a reasonable jury could find that Scully did in fact favorably evaluate Plaintiff's plan in 2007.  Therefore, Plaintiff is entitled to the justifiable inference that his termination was not on grounds of inadequacy but rather because of a discriminatory motive.

## 2.  Defendant's Legitimate Nondiscriminatory Reason

---

[2] Defendant argues in its motion to strike that this statement by Scully cannot be considered by the Court because it is double hearsay.  However, as noted below, the Court finds that the statement is admissible.  See discussion infra Part III.C.

Having established that Plaintiff has met his burden in establishing a prima facie case, the burden of production now shifts to the employer to articulate a "legitimate nondiscriminatory reason for the adverse employment decision."  Stewart, 120 F.3d at 432.  Defendant's support for its motion for summary judgment provides evidence of a legitimate, nondiscriminatory reason for terminating Plaintiff.  Specifically, Defendant successfully satisfies its burden of production by arguing that Plaintiff was terminated due to his failure to comply with the request of his supervisors and his allegedly threatening behavior on the date of his termination.  Def.'s Br. at 3-11, 12-13.  Accordingly, Plaintiff now bears the burden of establishing by a preponderance of the evidence that Defendant's explanation was not the true reason for the challenged action.  St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 511 (1993).

### 3.  Plaintiff's Showing of Pretext

In order to survive summary judgment in the pretext stage of the McDonnell-Douglas analysis, Plaintiff "must demonstrate such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could rationally find them 'unworthy of credence' and hence infer 'that the employer did not act for [the asserted] non-discriminatory reasons.'"  Zaffuto v. Wal-Mart Stores, Inc., 130 Fed. Appx. 566, 569 (3d Cir. 2005) (quoting Kolb v. Burns, 320 N.J. Super. 467, 478 (App. Div. 1999) (citations omitted)).[2]

---

[2] The Third Circuit noted in Zaffuto, "[a]s recognized by the New Jersey courts, the prima facie element of causation and the element of causation in the subsequent ultimate proof stage of the case are often factually inseparable and therefore a court may rely on evidence provided in the early phase in resolving the latter."  130 Fed. Appx. at 569 (citing Donofry v. Autotote Sys., Inc., 350 N.J. Super. 276 (App. Div. 2001)).

In this stage of the analysis, this Court will look beyond the mere temporal relationship between the protected activity and the employer's adverse action and engage in a context-specific analysis to determine the employer's motive and whether Plaintiff's protected activity was, indeed, the cause of his termination.  Upon review of the record, the Court finds that Plaintiff has produced sufficient evidence to call into question Defendant's proffered legitimate reasons for Plaintiff's termination.  Viewing the facts in a light most favorable to Plaintiff, the Court notes that Plaintiff has produced two arguments, supported by evidence, that would allow a jury to potentially disbelieve Defendant's evidence.  As noted above, Plaintiff has referenced an e-mail from a Human Resources Manager in Comcast that states, "I don't know if we have enough to support [Plaintiff's] termination . . . ."  Pl. Ex. PX 15.  In addition, Plaintiff has cited written notes that record a Comcast Vice President's "[o]pinion [that Plaintiff] had been treated unfairly," that Plaintiff's report was "fine . . . a good plan," that Plaintiff "was set up to fail," and that Plaintiff's treatment "was unfair."  Pl. Ex. PX 21, Peaker's notes.  Accordingly, this Court finds that Plaintiff has produced sufficient evidence to demonstrate a likelihood that Defendant's proffered reasons for Plaintiff's termination were pretextual.

### B.    Plaintiff's CEPA Claim

Plaintiff alleges that his termination constituted retaliation in violation of CEPA, N.J.S.A. § 34:19-2(e).  CEPA was enacted to "protect employees who report illegal or unethical work-place activities."  Barratt v. Cushman & Wakefield of New Jersey, Inc., 144 N.J. 120, 127 (1996).  Similar to race discrimination claims under § 1981, CEPA claims are analyzed under the McDonnell-Douglas burden-shifting framework.  See Kolb, 320 N.J. Super. at 478-79.  Plaintiff must first establish the four-factor prima facie case: (1) he reasonably believed that his employer's conduct was violating either a law or regulation promulgated pursuant to law; (2) he

performed a whistle-blowing activity described in N.J.S.A. § 34:19-3a, c(1), or c(2); (3) his employer took an adverse employment action against him; and (4) there is a causal connection between the whistle-blowing activity and the adverse employment action.  Id. at 476; Blackburn v. United Parcel Service, Inc., 179 F.3d 81, 92 (3d Cir. 1999).  Where a plaintiff's alleged whistle-blowing addressed a clear mandate of public policy as described in N.J.S.A. 34:19-3a(c)(3), the plaintiff must first articulate the existence of a clear mandate of public policy which the employer's conduct violates.  Mehlman v. Mobil Oil Corp., 153 N.J. 163, 187 (1998).

Once the plaintiff establishes these factors, "the burden of production is shifted to the employer to rebut the presumption of discrimination by articulating some legitimate nondiscriminatory reason for the adverse employment action." Zive v. Stanley Roberts, Inc., 182 N.J. 436, 449 (2005).  The burden of production then returns to the plaintiff to demonstrate that the proffered reasons were merely pretextual.  Id.  While the plaintiff need not provide direct evidence that his employer acted for discriminatory reasons, he must "point to sufficient evidence to support an inference that the employer did not act for its proffered nondiscriminatory reasons."  Id.  This "burden merges with the plaintiff's ultimate burden of persuading the court that she or he was subjected to intentional discrimination."  Id.  CEPA is remedial legislation, and therefore must be "construed liberally to effectuate its important social goals."  Feldman v. Hunterdon Radiological Associates, 187 N.J. 228, 239 (2006) (citations omitted).

In the present matter, Defendant contends that (1) Plaintiff has failed to demonstrate that Defendant has violated a clear mandate of public policy in New Jersey, because Plaintiff never made a protected complaint; (2) Plaintiff has failed to establish a causal connection between Plaintiff's alleged "whistle-blowing activity" and the adverse employment action, and therefore has not established the fourth prong of a prima facie case under the CEPA analysis; and (3) even

if Plaintiff does establish his prima facie case, summary judgment is appropriate because Plaintiff cannot offer sufficient evidence that the reasons offered for his termination were a pretext for retaliation.  Because the Court finds that Plaintiff has not made a protected complaint, and that Plaintiff has failed to establish a causal connection, the Court grants summary judgment to Defendant on Plaintiff's CEPA claim.

### 1.  Whether Plaintiff's Complaint was a "Protected Activity" under CEPA

Defendant argues that Plaintiff's CEPA claim must fail as a matter of law because Plaintiff has not engaged in a protected activity.  "Proof that the complaining employee had engaged in a protected activity is an essential element to a claim of retaliation." Quinlan v. Curtiss-Wright Corp., 976 A.2d 429, 436 (N.J. Super. App. Div. 2009).  Plaintiff alleges that he was unlawfully retaliated against in violation of CEPA because Plaintiff had raised concerns within Comcast about sharing proprietary vendor information, and that Plaintiff was subsequently terminated.  Defendant argues that Plaintiff's act of raising these concerns is not a protected activity under CEPA.

Plaintiff states that on or about May 16 or May 17, 2007, he called Susan Sullivan, a paralegal in Comcast's legal department, to speak about his concerns that Fujitsu's proprietary information was being disclosed via Comcast's operations in the Test Project.  Choy Dep. 57:3-11.  Plaintiff further states that he was told by Sullivan that because there was no non-disclosure agreement ("NDA") between the two vendors in the Test Project, Cisco and Fujitsu, Plaintiff "needed to do a good job of not releasing proprietary information between vendors." Id.  Despite this conversation, Plaintiff alleges that Surdam continued to press Plaintiff to involve both vendors closely in the Test Project.  Id. at 61:3-19.

15

Defendant counters that Plaintiff's conversations with Sullivan and Surdam fail to evidence that Plaintiff made a complaint protected under CEPA.  Defendant argues that Plaintiff's concerns do not constitute a disclosure, complaint or a refusal to participate in an activity reasonably believed to be unlawful.  Courts have recognized that plaintiffs have made complaints protected under CEPA where there is evidence that the plaintiffs reasonably believed that the employer was encouraging the violation of an unlawful activity that will have harmful effects on the public's welfare.  See, e.g., Blackburn v. United Parcel Service, 179 F.3d 81 (3d Cir. 1999) (plaintiff engaged in protected activity where he submitted numerous written memos to his employer describing why he believed the employer was violating anti-trust law).

In support of Plaintiff's claim that he engaged in a protected activity, Plaintiff points to a May 17, 2007 e-mail from Plaintiff to Surdam.  Pl. Ex. PX-8.  However, the Court finds that this e-mail cannot be fairly read to support Plaintiff's claims.  Nowhere in the May 17 e-mail does Plaintiff object or refuse to participate in the Test Project because of his alleged concern that Fujitsu's proprietary information would be jeopardized; nor does Plaintiff otherwise protest the proposed methodology for the Test Project.

Furthermore, even if Plaintiff were able to produce evidence that he had objected to the unlawful exposure of Fujitsu's proprietary information, Plaintiff's CEPA claim would still fail because such harm to a private entity does not constitute a public harm covered by CEPA.  To establish the existence of a complaint protected under CEPA, "the offensive activity must pose a threat of public harm, not merely private harm."  Mehlman v. Mobil Oil Corp., 707 A.2d 1000, 1013 (N.J. 1998).  The New Jersey Supreme Court has previously held that an employee who disagreed with the terms of a non-compete provision in her employment agreement "did not implicate violation of a clear mandate of public policy as contemplated by Section 3c(3) of

CEPA," because the employee's disagreement was over merely private harm.  Maw v. Advanced Clinical Communications, Inc., 846 A.2d 604, 609 (N.J. 2004).  Here, Plaintiff has only alleged that one vendor, Cisco, has offered to help Plaintiff complete his Test Project, and that Plaintiff was worried that Fujitsu's proprietary information might have been compromised by Cisco's involvement in the Test Project.  As noted above, the Court finds that Plaintiff has failed to demonstrate that, prior to his date of termination, he expressed to Surdam or any other supervisor that Plaintiff believed Fujitsu's proprietary information was being unlawfully exposed.  Moreover, even if Plaintiff had made such a demonstration, Plaintiff's concerns in the instant matter relate only to a dispute over harm to a vendor's internal, proprietary information, and not to public harm.  Therefore, Plaintiff's claim fails as a matter of law to constitute a protected complaint under CEPA.

### 2.  Prima Facie Case - Causal Connection

Defendant alternatively argues that even if Plaintiff had made a protected complaint, Plaintiff's CEPA claim must be dismissed because Plaintiff has failed to show a causal connection between Plaintiff's complaint and a his termination.  Having established that he was subjected to a retaliatory action under CEPA (termination), Plaintiff must provide some evidence of a causal connection between the action and the alleged "whistle-blowing." Kolb, 320 N.J. Super. at 476.  "A CEPA plaintiff can prove causation by presenting either direct evidence of retaliation or circumstantial evidence that justifies an inference of retaliation." Zaffuto, 130 Fed. Appx. at 569.  The Court finds that Plaintiff has failed to demonstrate the requisite causal connection.

The amount of elapsed time between Plaintiff's alleged whistle-blowing activity and the employer's adverse action under CEPA does not permit an inference of causation in the prima

facie stage.  Plaintiff's termination was not one of those "rare cases" where the decision to

discharge takes place so soon after the discovery of the participation in protected conduct that the

inference of discrimination is impossible to ignore.  <u>Bowles v. City of Camden</u>, 993 F. Supp. 225,

264 (1998); <u>see also</u> <u>Schlinchtig</u>, 271 F. Supp. 2d at 612 ("[T]he temporal proximity between an

employee's termination and his protected activity may permit an inference of causation where

the relatively short interval between the two is 'unusually suggestive' of retaliation.").  Rather,

three months passed between the time Plaintiff contacted Comcast's legal department and the

time Plaintiff was ultimately terminated.  The evidence shows that Plaintiff was given a period of

several weeks after his notice of termination to find another position inside or outside Comcast.

Moreover, there is no evidence that Plaintiff expressed his concerns about the proprietary

information to Surdam, or that Surdam knew of Plaintiff's concerns, at the time that Plaintiff was

terminated.  <u>See</u> Pl. Opp'n br. at 27-28; Choy Dep. Def. Ex. OO, at 86:10-12.  Therefore,

Plaintiff has failed to establish a prima facie CEPA violation, and Plaintiff's CEPA claim must

be dismissed.

### C. Comcast's Motion to Strike

In addition to its Motion for Summary Judgment, Defendant moves to strike several

paragraphs in Plaintiff's Counterstatement of Undisputed Material Fact under Federal Rule of

Civil Procedure 12(f).  The two paragraphs most relevant to Plaintiff's Opposition to

Defendant's Motion for Summary Judgment are paragraphs 29B[3] and 30.[4]  Defendant argues that

---

[3] "Plaintiff's initial Test Plan contains the essential information for the successful completion of the test project and was endorsed as a good test plan by Matt Scully, a Comcast Senior Vice President."

[4] "Plaintiff submitted his initial test plan to Surdam on May 11, 2007 and re-sent on May 17, 2007, less than two weeks after he was told to assume the project.  The initial Test Plan contained the essential information for the successful completion of the test project and was

these paragraphs are inadmissible as double hearsay.  Plaintiff maintains that the paragraphs are relevant and that they are admissible because they are not hearsay.  The Court agrees with Plaintiff that Defendant has failed to produce sufficient evidence to prevail on its motion to strike at this time.

Paragraphs 29B and 30 each relate to the statements allegedly made by Scully that Plaintiff had done "a good job" on the Test Project, that Plaintiff's termination was "unfair," and that Plaintiff was "set up to fail."  Defendant argues that these statements constitute double hearsay.  Defendant does not dispute that the statements were recorded in the normal course of business by Helfman, at or near the time of their making, in satisfaction of Federal Rule of Evidence 803(6), the "business records exception" to the hearsay rule.  Defendant instead disputes the second level of hearsay, arguing that Peaker's recollection of Scully's statement is being offered for its truth in violation of Federal Rule of Evidence 802.

Plaintiff argues that Peaker's statement is admissible because it is a "party admission" under Federal Rule of Evidence 801(d)(2)(D), and is therefore not hearsay.  Plaintiff notes that Peaker was testifying as to a matter about which Peaker had personal knowledge, since Peaker allegedly heard Scully's statement himself.  Scully's statement, Plaintiff argues, is properly considered a party admission because Scully, as a Senior Vice President at Comcast, is an "agent" within the meaning of Rule 801(d)(2)(D).  Plaintiff further argues that Scully was within the scope of his function at Comcast when he made his statement.  Pl. Opp'n br. to Motion to Strike at 4.  Defendant argues that Scully could not have made his statement within the scope of his employment at Comcast because Scully did not supervise Plaintiff and did not play a role in the

_____

endorsed as such by Matt Scully, a Comcast Senior Vice President.  No template was provided to Choy and no specific date was set by Surdam."

decision to dismiss Plaintiff.  Def. Reply br. Motion to Strike at 5.  Plaintiff argues that Scully must have had authority to evaluate Plaintiff's work, because Scully held a position senior to Plaintiff, and while in his senior position, Scully specifically endorsed Plaintiff's Test Plan.

As noted above, motions to strike are disfavored and usually will be denied "unless the allegations have no possible relation to the controversy and may cause prejudice to one of the parties, or if the allegations confuse the issues in the case."  River Road Dev. Corp., 1990 WL 69085, at *3.  The issue of whether Scully had authority to evaluate Plaintiff's work is genuinely in dispute in the instant matter.  At this stage, Plaintiff has identified facts that could lead a reasonable trier of fact to conclude that Scully made the statements about Plaintiff's work in the scope of Scully's employment with Comcast.  Noting that district courts have "considerable discretion" in deciding a Rule 12(f) motion, Tonka, 836 F. Supp. at 217, the Court declines to grant Defendant's motion to strike Plaintiff's paragraphs 29B and 30 at this time.  Because the Court finds that Defendant's Motion to Strike numerous other paragraphs in Plaintiff's Counterstatement of Undisputed Material Fact are not essential to the resolution of Defendant's motion for summary judgment, and because the Court has resolved Defendant's motion for summary judgment by locating genuine issues of material fact in this case, the Court denies the remainder of Defendant's motion to strike as moot.[5]

## IV.    CONCLUSION

For the reasons detailed above, the Court grants Defendant's motion for summary judgment as to Plaintiff's CEPA claim, denies Defendant's motion for summary judgment as to

_____

[5] The Court notes the objections in Defendant's Motion to Strike, and accordingly the Court does not adopt Plaintiff's statements as undisputed.

Plaintiff's Section 1981 claim, and denies Defendant's motion to strike.  An appropriate order

shall enter today.


Dated:  1/26/2011                                    /s/ Robert B. Kugler
                                                     ROBERT B. KUGLER
                                                     United States District Judge